## STATE v. WINFRED R. STINSON.

(Filed 15 January, 1965.)

**1. Criminal Law § 127—**

A judgment of nonsuit has the force and effect of a verdict of not guilty of the charge contained in the indictment. G.S. 15-173.

**2. Criminal Law § 26—**

No person may be twice put in jeopardy for the same offense, but the burden is upon defendant to prove his plea of former jeopardy and show that the prior prosecution was for the same offense, both in law and in fact.

**3. Same—**

In a prosecution for the larceny of certain property from a named individual, plea of former jeopardy based upon a nonsuit for variance entered in a prior prosecution on an indictment charging larceny of the same property but laying the ownership of the property in a nonexistent corporation, is properly denied by the court upon an examination of the two indictments without introduction of evidence by defendant or submission of issues to the jury.

**4. Criminal Law § 71—**

Evidence to the effect that defendant, while in jail, requested to see a specified police officer and made a confession to such officer when the officer went to the jail in response to defendant's request, and that the officer made no promises or threats of any kind, supports the court's finding that the confession was freely and voluntarily made.

**5. Same—**

Where a defendant charged with a crime makes an extrajudicial confession to a police officer while defendant is confined in jail, it is not required that defendant be warned that anything he said might be used against him.

**6. Criminal Law § 48—**

Where defendant tells his confederate to go ahead and tell the truth and that he would stop him if he lied, and the confederate recounts the circumstances of the commission of the offense, including statements directly implicating defendant, defendant's failure to deny the accusation of guilt is competent.

**7. Criminal Law § 34—**

Where the State's evidence tends to show larceny of property and flight of the participants by automobile immediately after the larceny, evidence of the prior larceny of the automobile in another state is competent as tending to show the existence of a plan or design to commit the larceny charged.

**8. Criminal Law § 157—**

Where defendant introduces evidence, only the correctness of the motion to nonsuit made at the close of all the evidence will be considered on appeal. G.S. 15-173.

**9. Criminal Law § 101—**

Where the State introduces evidence of the *corpus delicti* in addition to defendant's confession of guilt, defendant's motion to nonsuit is correctly denied notwithstanding defendant's evidence in conflict.

APPEAL by defendant from *Hall, J.,* June 1964 Session of ALAMANCE.

Criminal prosecution on an indictment, found by the Grand Jury at the June 1964 Session, containing two counts charging that defendant and one Donald L. Stinson on 12 January 1963 (1) did unlawfully, wilfully and feloniously break and enter into a certain shop and dwelling in Alamance County, owned and occupied by R. W. Messer, with intent to steal, take and carry away merchandise, chattels and money kept therein, the property of the said R. W. Messer; and (2) on the same date and in the same place did feloniously steal, take and carry away a McCaskey Cash Register and $440 in cash money, all of the value of $1,035, and all the property of the said R. W. Messer.

Before pleading to the indictment, defendant, who was represented by his present counsel of record, entered a plea of former acquittal. In support of his motion, defendant offered the following evidence: At the May 1964 Criminal Session he was tried upon an indictment, found by the Grand Jury at the March 1963 Session of Alamance County superior court, charging him, Leonard Lee Stinson, and Donald Lee Stinson with the identical offenses charged in the indictment in the instant case, except that in the indictment found at the March 1963 Session there was a third count charging receiving stolen property knowing it to have been stolen, and except that in the same indictment in all three counts the ownership of the property was laid in Stop and Shop Super Market, a corporation. This indictment was offered in evidence. At the conclusion of the State's evidence in the case tried at the May 1964 Criminal Session, defendant made a motion for judgment of nonsuit, which the court allowed. Testimony of R. W. Messer was to the following effect: He operated in the city of Burlington a business known as Stop and Shop Super Market. He owns it personally: it is not a corporation. He knows of no business known as Stop and Shop Super Market, Incorporated. At the May 1964 Criminal Session, he appeared in court and testified about a breaking and entry into his store and of articles missing therefrom. In that case, the present defendant was one of the defendants. The breaking and entering that he testified about at the May 1964 Criminal Session is the same breaking and entering that he is presently in court to testify about. The indictment in the instant case was introduced in evidence. The court overruled defendant's plea of former acquittal. In addition, the court entered a written order finding the following facts: At the May 1964 Criminal Session defendant was tried by the same judge for offenses growing out of the same transactions as the offenses alleged in the present indictment. In the previous indictment the ownership of the property therein described was laid in Stop and Shop Super Market, a corporation, and at the May 1964 Criminal Session the same judge allowed defendant's motion for judgment of nonsuit at the conclusion of the State's evidence, for the reason that the ownership of the. property was laid in a corporation and the proof showed that the property was owned by an individual, R. W. Messer, and consequently, there was a fatal variance between allegation and proof. In the indictment in the instant case, the ownership of the property is laid in R. W. Messer. Defendant has never been tried, acquitted or placed in jeopardy for the offenses with which he now stands charged in the indictment in the instant case. Wherefore, he ordered that the defendant's plea of former acquittal be overruled.

The State offered no evidence in reply.

Whereupon, defendant entered a plea of not guilty. Verdict: Guilty as charged in the indictment.

From a judgment of imprisonment, defendant appeals to the Supreme Court.

*Attorney General T. W. Bruton, Deputy Attorney General Harry W. McGalliard, Assistant Attorney General Richard T. Sanders, and Andrew A. Vanore, Jr., Staff Attorney for the State.*
*Paul H. Ridge for defendant appellant.*

PARKER, J. When at defendant's trial at the May 1964 Criminal Session a judgment of nonsuit was entered by the court on his motion, it had "the force and effect of a verdict of 'not guilty' as to such defendant" of the charges averred in the indictment on which he was being tried. G.S. 15-173; *S. v. Smith*, 236 N.C. 748, 73 S.E. 2d 901.

If there is anything settled beyond reconsideration in the criminal jurisprudence of England and America, it is that no one shall twice be put in jeopardy for the same offense, both in law and in fact. *S. v. Hicks*, 233 N.C. 511, 64 S.E. 2d 871; *Ex parte Lange*, 18 Wall. (U.S.) 163, 21 L. Ed. 872.

Defendant has the burden of proof on his plea in bar of former acquittal to show that he had been formerly acquitted for the same offense, both in law and in fact. *S. v. Jesse*, 20 N.C. 95; *S. v. Nash*, 86 N.C. 650; *S. v. White*, 146 N.C. 608, 60 S.E. 505; *S. v. Bell*, 205 N.C. 225, 171 S.E. 50; *S. v. McIntosh*, 260 N.C. 749, 133 S.E. 2d 652.

Defendant assigns as error that the court denied his plea of former acquittal; that the court erred in finding that "defendant has never before been tried, acquitted or placed in jeopardy for the offenses wherewith he now stands charged in the present bill of indictment"; and in refusing to submit an issue to the jury of former acquittal as tendered by him.

The case of *S. v. Law and Kelly*, which was before this Court twice on appeal, is apposite. On the first appeal, 227 N.C. 103, 40 S.E. 2d 699, defendants were found guilty on an indictment charging them in one count with the larceny of an automobile, the property of the city of Winston-Salem; and, in a second count, with receiving the automobile, the property of the city of Winston-Salem, knowing it to have been feloniously stolen, and appealed from judgments of imprisonment imposed in accord with the verdict. The record disclosed that on the night of 15 April 1946, Oscar Morrison, a police officer of the city of Winston-Salem, discovered an automobile on one of the city streets

from which a five-gallon container full of nontax-paid whisky had just been taken and which had evidently been transported therein contrary to law. He took possession of the automobile, drove it to the city lot and parked it for the night. The automobile was stolen from the city lot during the night, and there is evidence, circumstantial and presumptive, tending to connect defendants with its disappearance. The opinion, for a unanimous Court, written by Chief Justice Stacy, states:

> "The question for decision is whether there is a fatal variance between the indictment and the proof. *Stare decisis* would seem to require an affirmative answer.
>
> "Conceding that the automobile in question, even if originally the property of one of the defendants, was the subject of larceny while in the custody of the officer who had seized it under authority of law, still it does not follow that its ownership was properly laid in the City of Winston-Salem. The City had no property right in it, special or otherwise. Only the officer who seized the property was authorized to hold it, take and approve bond for its return 'to the custody of said officer,' and to hold it subject to the orders of the court. G.S., 18-6. A conviction under the present bill would not perforce protect the defendants against another prosecution with the right to the property laid in the seizing officer or in the custody of the law. *S. v. Bell,* 65 N.C. 313. The City of Winston-Salem, no doubt, owns a number of automobiles, such as would fit the description in the bill, but none of these was stolen. 'The object of an indictment is to inform the prisoner with what he is charged, as well to enable him to make his defense as to protect him from another prosecution for the same criminal act.' *S. v. Carlson,* 171 N.C. 818, 89 S.E. 30.
>
> "Usually a fatal variance results, in larceny cases, where title to the property is laid in one person and the proof shows it to be in another. *S. v. Jenkins,* 78 N.C. 478. 'In all cases the charge must be proved as laid.' *S. v. Bell, supra.*
>
> &ast;  &ast;  &ast;
>
> "The present conviction will be set aside, the demurrer to the evidence sustained, and the solicitor allowed to send another bill, if so minded."

On the second appeal, 228 N.C. 443, 45 S.E. 2d 374, defendants were found guilty on an indictment charging them, in one count, with the larceny of an automobile, the property of one Oscar Morrison; and, in

a second count, with receiving the same automobile knowing it to have been feloniously stolen, and appealed from judgments of imprisonment imposed in accord with the verdict. The evidence for the prosecution tends to show that on the night of 15 April 1946 Oscar Morrison and Holt Neal, police officers of the city of Winston-Salem, took possession of an automobile on Mickey Mill Road in the eastern section of the city, which they thought had been used in the illegal transportation of nontax-paid whisky, and drove it to the city lot where it was parked for the night. During the night the automobile was stolen from the city lot, and there is evidence, circumstantial and presumptive, tending to connect the defendants with its disappearance. The unanimous opinion of the Supreme Court was delivered again by Chief Justice Stacy. The opinion states:

> "The case was here at the Fall Term, 1946, on an indictment which laid the ownership of the property in the City of Winston-Salem. The officer who seized the property was alone entitled to hold it, or approve bond for its return, and it was suggested the right to the property should be laid in the seizing officer or in the custody of the law. 227 N.C. 103."

The Court held that Oscar Morrison, one of the seizing officers, was entitled to hold the automobile and to approve bond for its return, thus he had a special interest therein and consequently there was no fatal variance. The verdict and judgments were upheld.

The case of *S. v. Hicks,* which was before this Court twice on appeal, is also apposite. On the first appeal, 233 N.C. 31, 62 S.E. 2d 497, defendant and Chesley Morgan Lovell were tried upon two indictments, one of which charged Hicks and Lovell with conspiring to damage a building owned by the Jefferson Standard Broadcasting Company by the use of dynamite or other high explosive; and the other charged them with conspiring "to maliciously commit damage and injury to and upon the real property of the Jefferson Standard Broadcasting Company," and "to wantonly and wilfully injure the personal property of the Jefferson Standard Broadcasting Company, to-wit: Radio broadcasting equipment." Defendant Lovell pleaded guilty as charged in both indictments. The two indictments were consolidated for trial. Hicks pleaded not guilty to both indictments. The jury returned a verdict of not guilty as to him as to the charge of conspiracy to damage a building owned by the Jefferson Standard Broadcasting Company, but "Guilty of conspiracy to damage real property." From judgment on the verdict, Hicks appealed. The proof was to the effect that Hicks and Lovell conspired to maliciously commit damage and injury to the

property of the Duke Power Company. The Court held that there was a fatal variance between the allegations in the indictment and the proof, and that this question may be raised by motion for judgment as of nonsuit. The Court's opinion closed with this language: "The motion for judgment as of nonsuit should have been allowed with leave to the solicitor to secure another bill of indictment, if so advised." On the second appeal, 233 N.C. 511, 64 S.E. 2d 871, this case was a criminal prosecution for conspiracy tried upon a two-count indictment. The first count charged that the defendant conspired "with Chesley Morgan Lovell and other persons to the State unknown" to violate G.S. 14-127 by maliciously committing damage and injury upon the real property of the Duke Power Company, and the second count charges that the defendant conspired "with Chesley Morgan Lovell and other persons to the State unknown" to commit a misdemeanor denounced by G.S. 14-160 by wantonly and wilfully injuring the personal property of the Duke Power Company, to wit: "electrical transformers and other equipment of said Duke Power Company * * * located upon and near the property of the Jefferson Standard Broadcasting Company." Before pleading to the indictment in that case, defendant filed a plea of former acquittal setting forth the indictments in the case on his former appeal and the result of the former trial and the indictment in this case, and concluding from these matters that the crimes described in the indictment in the present case are identical with those charged against him in the indictments on his former trial, and that by reason thereof his acquittal upon those indictments constituted a bar to the present prosecution. Defendant tendered these two issues: (1) Has the defendant been formerly acquitted of the charge contained in the first count of the indictment in the instant case? (2) Has the defendant been formerly acquitted of the charge contained in the second count of the indictment in the present case? He prayed the court to submit the issues to the jury before the submission of the general issue of guilt, and to allow him to offer evidence before the jury on the trial of the issues to establish the identity of the two counts in the present indictment with the offenses charged in the previous indictments. The trial judge "refused to submit to the jury the two issues tendered by the defendant * * * and * * * held, as a matter of law, that there was no former acquittal or former jeopardy involved in this case." The defendant reserved exceptions to the rejection of his plea of former acquittal, and pleaded not guilty to the indictment. The action was then tried on the merits before a petit jury. This is a summary of the case made out by the State's testimony: The Jefferson Standard Broadcasting Company operates Radio Station WBT, which has offices

in the city of Charlotte and a transmission station in a rural section of Mecklenburg County. The transmission station is located on a 19-acre tract owned by the Broadcasting Company and is operated by means of electric power transmitted to it by the Duke Power Company through a transformer substation situated on the same land at a distance of 730 feet from the transmission station. The transformer substation is maintained and operated by the Duke Power Company, which placed it upon the 19-acre tract under a written contract binding the Jefferson Standard Broadcasting Company and specifying that the four transformers are the property of the Duke Power Company. There is evidence showing that defendant Hicks and Chesley Morgan Lovell entered into a conspiracy to blow up the transformers at the transformer station situated on the 19-acre tract, and that defendant Hicks agreed to pay Chesley Morgan Lovell $250 for so doing; that seven days later defendant Hicks caused a supply of dynamite to be concealed behind a signboard near Columbia, South Carolina, and notified Lovell of that fact by telephone; that Lovell took the dynamite into his possession, carried it from South Carolina to Mecklenburg County, North Carolina, where he entered upon the 19-acre tract at night on 21 January 1962, for the purpose of dynamiting the transformers pursuant to his agreement with Hicks. He was unable to accomplish his object because he was apprehended by the officers. Defendant offered evidence tending to show that he was not acquainted with Lovell and did not conspire with him or any other person to do any injury to the property of the Jefferson Standard Broadcasting Company, the Duke Power Company, or any other person. Defendant Hicks was found guilty as charged in the indictment, and from terms of imprisonment he appealed to the Supreme Court. In the opinion for a unanimous Court written by Ervin, J., finding no error in the trial, he states:

"Several criteria have been prescribed by the authorities for determining in diverse situations whether two indictments are for the same offense. The one applicable on the present record is the 'same-evidence test,' which is somewhat alternative in character. It is simply this: Whether the facts alleged in the second indictment, if given in evidence, would have sustained a conviction under the first indictment [Citing authority.] or whether the same evidence would support a conviction in each case [Citing authority.].

"Whether the facts alleged in the second indictment, if given in evidence, would have sustained a conviction under the first is al-

ways to be determined by the court from an inspection of the two indictments. *S. v. Nash, supra* [86 N.C. 650, 41 Am. Rep. 472]. Whether the same evidence would support a conviction in each case is to be determined by a jury from extrinsic testimony if the plea of former jeopardy avers facts *dehors* the record showing the identity of the offense charged in the first with that set forth in the last indictment. *S. v. Bell, supra* [205 N.C. 225, 171 S.E. 50].

"When these rules are laid alongside the case at bar, it is clear that the judge rightly refused to submit to the jury the two specific issues tendered by the defendant and rightly rejected the plea of former acquittal. The plea merely set forth the several indictments and the result of the former trial, and drew the legal conclusion from these bare matters that the defendant was being twice put in jeopardy for the same offense. It did not aver any facts *dehors* the record showing the identity of the crimes charged in the former indictments with those described in the present one. These things being true, the plea was insufficient, for it revealed on its face the nonidentity of the several offenses. The defendant's legal standing would not be bettered a whit, however, on this phase of the case if his plea of former acquittal had gone beyond the record and invoked the extrinsic testimony. This is so because evidence of a conspiracy to damage or injure property owned or used by the Duke Power Company will not support a conviction of a conspiracy to damage or injure property owned or used by the Jefferson Standard Broadcasting Company."

Applying the rules of law laid down in the cases of *Law* and *Hicks*, it is clear that if evidence was introduced by the State showing that defendant feloniously broke and entered a building occupied by R. W. Messer with intent to commit larceny of the merchandise, chattels and moneys therein, the property of R. W. Messer, and the larceny by him of a cash register and of money, the property of R. W. Messer, that such evidence will not support a conviction for the same offenses in respect to the property of Stop and Shop Super Market, a corporation, for a corporation is for most purposes an entity distinct from its stockholders (13 Am. Jur., Corporations, § 6), and capable of owning property. The offenses charged in the two indictments are not the same, in law and in fact. This was a question to be determined by the court from an examination of the two indictments. The evidence *dehors* the indictments offered by defendant on his plea of former acquittal would not support a conviction on the two indictments, consequently there was no question to be submitted to the jury. *S. v. Hicks,*

233 N.C. 511, 64 S.E. 2d 871; *S. v. Barefoot,* 241 N.C. 650, 86 S.E. 2d 424. This is not a case where a person has a name by reputation by which he is as well known as any other. The challenged finding of fact, or more properly conclusion of law, by Judge Hall in his order over-ruling defendant's plea of former acquittal is correct. His further finding in such order that on the former trial the judgment of nonsuit was entered by reason of a fatal variance between the allegations in the indictment and the proof is not material. This finding was not prejudicial to defendant, and he has not challenged it in his assignments of error.

Further, a valid indictment is an essential of jurisdiction. *S. v. Morgan,* 226 N.C. 414, 38 S.E. 2d 166. If it should be contended that no crime is charged in the first indictment for the reason there is no corporate entity in existence entitled Stop and Shop Super Market, a corporation, that would not bar a further prosecution on a valid warrant, because such a warrant would not support a plea of former jeopardy in a subsequent trial on a valid indictment. *S. v. Sossamon,* 259 N.C. 378, 130 S.E. 2d 640; *S. v. Barnes,* 253 N.C. 711, 117 S.E. 2d 849; *S. v. Morgan, supra.*

The trial judge correctly refused to submit to the jury the issues tendered by defendant of former acquittal and correctly rejected his plea of former acquittal.

R. O. Spoon, a sergeant on the Burlington police force, testified for the State in substance as follows, except when we quote: In January 1964 he received a note to contact the defendant at the county jail. He went to the jail and found the defendant playing cards with some of the prisoners. Defendant was aware of the charge against him. He asked him if he wanted to see him. Defendant replied, "Yes." He and defendant went into another cell. Defendant wanted to get a message to his aunt and to some people in West Burlington and he wanted to talk to Leonard Stinson and Donald Stinson, and wanted to know if he would take him to Hillsboro to see them. Defendant said he wanted to see Leonard and Donald Stinson and see if they would testify for him. He told him to let his conscience be his guide. They talked about the breaking and entering at the Stop and Shop Super Market. Defendant said: "You know and I know that I was there, I am guilty, but I want to talk to Donald and Leonard before I make up my mind how I am going to plead." Defendant had no lawyer at that time. He did not tell defendant that anything he might say might be used against him in court. He promised the defendant nothing and made no threats of any kind against him. The court found as a fact that the confession made by defendant was free and voluntary, and it was admitted in

evidence over defendant's objection and exception. Defendant assigns as error the admission of this confession. The finding by the judge that the confession was free and voluntary is supported by competent evidence. Sergeant Spoon, under the circumstances, was not required to warn defendant that anything he said might be used against him, for the reason that such "warning is not required in an extra-judicial conference between officers and a person charged with crime who is under no constraint to answer." *S. v. Grier*, 203 N.C. 586, 166 S.E. 595. Defendant's assignment of error is overruled upon authority of *S. v. Davis*, 253 N.C. 86, 116 S.E. 2d 365, *cert. den.* 365 U.S. 855, 5 L. ed. 2d 819; *S. v. Marsh*, 234 N.C. 101, 66 S.E. 2d 684; *S. v. Rogers*, 233 N.C. 390, 64 S.E. 2d 572; Strong's North Carolina Index, Vol. 1, Criminal Law, § 71.

J. Lacy Thomas, a detective in the Burlington Police Department, was present in the office of the Burlington Police Department with several officers and with Donald Stinson and defendant a few days after the breaking and entry and larceny in this case. Over the objection and exception of defendant, Thomas testified in substance as follows, except when we quote: Defendant "told Donald Stinson to go ahead and tell the truth, and if he lied in any way, he would stop him." Whereupon, Donald Stinson stated that sometime about three o'clock on the morning of 12 January 1963 he and defendant and Leonard Stinson, with Leonard driving a 1958 Oldsmobile, went to the grocery store on Trollinger Street. This automobile was one defendant had stolen in South Carolina. He got out of the automobile and using a hammer broke the glass in the front door of the building and entered the building, while Leonard and defendant circled the block. He took out of the building a cash register and $250 in money. Defendant did not deny his statement. Defendant merely said: "You little son-of-a-bitch. I wouldn't have told on you." Defendant assigns as error the admission of this statement as to what Donald Stinson said, and particularly the statement that he had stolen the automobile in South Carolina. R. W. Messer testified as a State's witness to the effect that his grocery business was located at 223 Trollinger Street.

*S. v. Kelly*, 216 N.C. 627, 6 S.E. 2d 533, is helpful. This case was a prosecution for murder committed in the perpetration of a robbery. One of the defendants objected to the testimony of a witness to the effect that the defendant had admitted he was an escaped prisoner and had escaped from prison with one of the other participants in the crime. It appeared that the statement was made to the witness during, and constituted a part of, a conversation with the witness in which the defendant made a voluntary confession which had been admitted in evi-

dence. The Court held that the exception was untenable since the whole of the conversation should be admitted in evidence in its entirety.

Under circumstances set forth in the record, we think the statement of Donald Stinson, including that in respect to the larceny of the automobile by defendant, was properly admitted in evidence for the following reasons: (1) The defendant "told Donald Stinson to go ahead and tell the truth, and if he lied in any way he would stop him." (2) When Donald Stinson, pursuant to such statement of the defendant, implicated defendant in the offenses charged, and in the larceny of an automobile in South Carolina, Donald Stinson's statement called for a reply, there was an opportunity for a reply by defendant, and defendant's reply was not a denial, but was a mere statement: "You little son-of-a-bitch, I wouldn't have told on you." *S. v. Temple,* 240 N.C. 738, 83 S.E. 2d 792. (3) Donald Stinson's statement in respect to the larceny of the automobile in South Carolina tends to show the existence of a plan or design to commit the offenses charged, and to provide a get away. Stansbury, North Carolina Evidence, 2d Ed., § 92. Defendant's evidence shows that they got away as far as the State of Maryland, where they had a wreck with the Oldsmobile and were apprehended by officers.

The other assignments of error to the admission of the evidence have been examined and are overruled. They do not merit detailed discussion.

Defendant assigns as error the denial of his motion for judgment of compulsory nonsuit made at the close of all the evidence offered by him and the State. The only question raised by this assignment of error is whether the court erred in the denial of the motion made by defendant at the close of all the evidence. G.S. 15-173; *S. v. Leggett,* 255 N.C. 358, 121 S.E. 2d 533. The State's evidence tends to show that on 12 January 1963 a grocery store owned and operated by R. W. Messer at 223 Trollinger Street in Burlington was broken into in the nighttime, and that there was stolen therefrom a McCaskey cash register and $440 in cash money, all the property of R. W. Messer. It also tends to show that defendant told Sergeant Spoon, "I am guilty." The defendant's evidence tends to show the following facts: Donald Stinson, Leonard Stinson, and defendant on the night of 12 January 1963 went to Messer's grocery store on Trollinger Street in the city of Burlington, that when they arrived there defendant was drunk and passed out in the back seat, that Donald Stinson got out of the car and broke and entered this grocery store, that he brought out a cash register and money, that defendant got none of the money that came from the

grocery store, and that they left Burlington and went to Maryland where they had a wreck with the Oldsmobile car and were arrested. Leonard Stinson is now serving a prison sentence for breaking and entering this grocery store. Donald Stinson has been tried and convicted a number of times for felonious breaking and entry and larceny. The State offered evidence in rebuttal to this effect: The three officers of the Burlington police force had conversations with Leonard Stinson, Donald Stinson, and Winfred Stinson about this case, and that none of them stated to them that when the store was broken into and entered and the goods therein stolen that defendant Winfred Stinson was passed out drunk in the automobile. A consideration of the State's evidence and the defendant's evidence shows that it was amply sufficient to carry the case to the jury and to support the verdict of guilty as rendered by the jury.

Defendant's assignments of error to the charge are too attenuate to invalidate the trial. All defendant's assignments of error are overruled. No error is shown sufficient to warrant disturbing the verdict and judgment below.

No error.